FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 03, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPHINE VIDALES,<br><br>        Plaintiff,<br><br>       v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No. 1:17-CV-03093-JTR-1<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION, DENYING DEFENDANT'S MOTION, AND REMANDING FOR FURTHER PROCEEDINGS<br><br>**MOTION GRANTED in part**<br>**(ECF No. 14)**<br><br>**MOTION DENIED**<br>**(ECF No. 19)** |

Before the Court are cross-motions for summary judgment. ECF Nos. 14, 19. Plaintiff, Josephine Vidales, is represented by counsel D. James Tree. Defendant, the Commissioner of Social Security, is represented by counsel Catherine Escobar and Assistant United States Attorney Timothy M. Durkin. The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs submitted by both parties, the Court GRANTS in part Plaintiff's Motion for Summary Judgment, ECF No. 14, DENIES Defendant's Motion for Summary Judgment, ECF No. 19, and REMANDS to the ALJ for further proceedings consistent with this opinion.

## JURISDICTION

Plaintiff protectively filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on July 29, 2013, alleging disability beginning July 1, 2009. Tr. 203. The applications were denied, both initially, and upon reconsideration. Tr. 115-23, 126-36. Administrative Law

ORDER - 1

Judge (ALJ) Gordon W. Griggs held a hearing on July 29, 2015 and heard testimony from Plaintiff and vocational expert, Trevor Duncan. Tr. 36-56. At the hearing, Plaintiff amended her disability onset date to July 29, 2013. Tr. 51. The ALJ issued an unfavorable decision on October 14, 2015. Tr. 11-29. The Appeals Council denied Plaintiff's request for review of this decision on May 28, 2017. Tr. 1-6. The ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on May 23, 2017. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 36 years old at the amended onset date. Tr. 42. Plaintiff left school before completing the ninth grade and has not earned a GED. Tr. 42-43. Plaintiff's work history includes her employment as a fruit packer/sorter and kitchen prep worker. Tr. 209. Plaintiff stated she stopped working on July 1, 2009 due to her conditions. Tr. 208.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence of if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. At 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1091.

If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bown*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a); 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Baston v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On October 14, 2015, the ALJ issued a decision finding Plaintiff was not disabled under the Social Security Act. Tr. 11-29.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 29, 2013. Tr. 16.

At step two, the ALJ determined the Plaintiff had the following severe impairments: major depressive disorder, lumbago with degenerative disc disease in the thoracic spine, post-concussive syndrome, gastroesophageal reflux disease (GERD), knee pain without clear etiology, obesity, and chronic tension headaches. Tr. 16-17.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 18-20.

At step four, the ALJ assessed Plaintiff's residual function capacity as the "capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). In addition, the claimant can occasionally climb ladders, ropes, and scaffolds, and she can frequently climb ramps and stairs. She is further limited to occasional exposure to hazardous conditions such as proximity to unprotected heights and moving machinery. The claimant is also limited to tasks that can be learned in thirty days or less, involving no more than simple work-related decisions and few workplace changes. Finally, she can have superficial public interaction, but she would not be well suited for complicated, nuanced, or highly technical conversational interchange." Tr. 20.

The ALJ then identified Plaintiff's past relevant work as an agricultural produce sorter and determined that, considering her age, education, work experience, residual function capacity, and the testimony of the vocational expert, that Plaintiff was capable of performing her past relevant work as an agricultural produce sorter as actually and generally performed. Tr. 23. The ALJ ended his analysis at step four and concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from the amended onset date, July 29, 2013, through the date of the ALJ's decision. Tr. 24.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits, and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by: (1) failing to properly assess the medical opinion evidence; (2) failing to consider Plaintiff's illiteracy in determining Plaintiff's residual function capacity (RFC); (3) improperly discrediting Plaintiff without specific, clear, and convincing reasons to do so; and (4) improperly assessing Plaintiff's RFC and finding she could return to her past relevant work.

**DISCUSSION**

**1. Medical Opinions**

Plaintiff argues that the ALJ failed to properly weigh and consider the medical opinions of Emma Billings, Ph.D., and Jenifer Schultz, Ph.D. ECF No. 14 at 6-10.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id*.

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons." *Lester*, 81 F.3d at 830-31.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his own interpretations and explain why they, rather than the doctors' opinions, are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### A. Emma Billings, Ph.D.

Dr. Billings conducted a diagnostic examination of Plaintiff on October 29, 2013, three months after the amended onset date. Tr. 546. Dr. Billings administered a full-scale IQ assessment to Plaintiff in addition to her psychological evaluation. Tr. 546-53. Dr. Billings opined that Plaintiff had borderline intellectual functioning, that she had the ability to learn and recall routine tasks with repetition, but she had difficulty with multi-step activities both immediately and after a delay, that her pace at responding to tasks was within low average levels, and that she did not demonstrate any difficulties with inattention, but that it was necessary to "continually repeat directions to her with every activity before she was able to understand and begin each task." Tr. 551.

The ALJ gave Dr. Billings' opinion only "some weight," but failed to give specific reasons as to why. He stated that he "accounted for the claimant's cognitive deficits" in assessing Plaintiff's RFC based upon the objective testing contained in Dr. Billings' evaluation. However, when comparing the ALJ's RFC determination with Dr. Billings' ultimate opinion, a number of elements are missing from the RFC without explanation from the ALJ.

Dr. Billings opined that Plaintiff's pace in completing tasks was within low average ranges and that she required constant repetition of directions before beginning a new task. Tr. 552. Not only is this portion of the opinion uncontradicted in the record, but it is also echoed in the opinion of state agency

reviewing doctor, Beth Fitterer, Ph.D. Tr. 109. The ALJ's explanation of his RFC determination fails to take into account pace, or the need for continuously repeated instructions. Tr. 20. The ALJ states in conclusory fashion that he "accounted" for Plaintiff's cognitive deficits, but does not explain what deficits he accounted for, nor how the RFC accommodates any limitations caused by her cognitive deficits.

Defendant argues that the alleged omission of portions of Dr. Billings' opinion in the RFC determination is harmless error because it is "inconsequential to the ultimate nondisability determination." ECF No. 19 at 7. (internal citation omitted). In other words, Defendant argues that in the event the ALJ committed legal error in failing to address the medical opinions with the proper weight, such error is irrelevant because even if the ALJ had committed no error, the RFC determination would remain unchanged. Defendant suggests that a review of the record as a whole supports the ALJ's RFC finding as consistent with both Dr. Billings' and Dr. Schultz' opinions. ECF No. 19 at 7.

The Court finds that though compelling, Defendant's argument must fail. Multiple sources of authority as well as agency rulings make it abundantly clear that in assessing RFC, an ALJ must "always consider and address medical source opinions. If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator **must** explain why the opinion was not adopted." *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006); S.S.R. 96-8p (emphasis added). The ALJ's failure to address the complete opinion of Dr. Billings in addition to his failure to provide any reason for his omitting certain limitations from the RFC determination is clear error. Therefore, the matter must be remanded with directions to the ALJ to readdress Dr. Billings' opinion in full.

**B.    Jenifer Schultz, Ph.D.**

Dr. Schultz conducted a diagnostic examination of Plaintiff on September 30, 2013, two months after the amended onset date. Tr. 540. Dr. Schultz reported

that Plaintiff's mother drove her to the appointment and that Plaintiff appeared to be dressed appropriately with good hygiene. Tr. 542. She observed that Plaintiff's affect was constricted and that her stream of thought and her thought content were limited. Tr. 543.

Despite these normal observations, following testing and a clinical interview, Dr. Schultz provided the following medical source statement:

> [Plaintiff's] ability to understand and reason is affected by her concrete thinking style and learning/borderline intellectual abilities and is poor at this time. Her immediate memory is adequate but her historical memory is not good. She has few friends and limited activities. [Plaintiff's] ability to tolerate or adapt to stress is poor.

Tr. 544. The ALJ provided two reasons for giving Dr. Schultz' opinion only some weight. He found that her opinion was not entirely consistent with the record, including Dr. Schultz's own observations of Plaintiff, and that Plaintiff's reported daily activities contradicted Dr. Schultz's conclusions. Tr. 22.

As to Dr. Schultz's observations being inconsistent with her own opinion, the ALJ does not point to specific instances of how any of Dr. Schultz's opinions are inconsistent with her observations. The ALJ recites only that Dr. Schultz observed Plaintiff to present with "good hygiene, as cooperative, with normal speech, and with good eye contact." Tr. 22. The ALJ does not explain, nor can this Court infer, how this presentation is in contradiction with Dr. Schultz's ultimate findings. *Embrey*, 849 F.2d at 421-22.

As to the ALJ's second reason, that Plaintiff's reported activities of daily living belie Dr. Schultz's conclusions as to Plaintiff's limitations, the ALJ does provide specific examples from the record. Tr. 22 ("She reported that she is able to care for her four children, that she is able to do simple crossword puzzles, she is able to spend time with friends, and that she is able to go shopping."). He goes on

to state that this conflicts with Dr. Schultz's opinion as to Plaintiff's limitations, but nevertheless he "accounted for her cognitive and social difficulties" in his RFC determination. Tr. 22.

The ALJ's reasons for giving only "some" weight to Dr. Schultz's opinion are not supported by the record. As this matter is being remanded as outlined above, the ALJ is also instructed to readdress Dr. Schultz's opinion in full.

**2.     Plaintiff's Illiteracy**

Plaintiff's second issue raised on appeal contends that the ALJ failed to properly assess or consider Plaintiff's illiteracy in his RFC determination. ECF No. 14 at 13.

Defendant argues that illiteracy is a vocational factor, only to be considered at step five, after an RFC determination is made. ECF No. 19 at 5. While Defendant's argument is supported in the law, it does not address the specific issue raised by Plaintiff. Plaintiff argues that the ALJ failed to weigh her illiteracy in making the RFC determination to begin with. ECF No. 14 at 13.

The record is absent of any medical evidence evaluating Plaintiff's uncontradicted claims of illiteracy. The ALJ appears to have discredited Plaintiff's statement that she cannot read by pointing out that she can do word search style crossword puzzles. Tr. 21. While this may have relevance in a credibility determination, it is not a sufficient reason for disregarding Plaintiff's alleged impairment altogether.

Whether Plaintiff is illiterate is crucial to determining her RFC, and considering this case is being remanded, the ALJ is instructed to develop the record on this point. *See Howard v. Massanari*, 255 F.3d 577, 584-85 (8th Cir. 2001) citing *Wilcutts v. Apfel*, 143 F.3d 1134, 1137-38 (8th Cir. 1998) (the ALJ has the duty to fully and fairly develop the record and listing tests which could be administered to determine literacy).

///

### 3. Evaluation of Plaintiff's Statements

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *See Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). In determining credibility, the ALJ may weigh the claimant's "reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains." *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). If the ALJ's credibility finding is supported by substantial evidence in the record, the district court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

In assessing Plaintiff's credibility, the ALJ compared the mini mental status examinations given by both Dr. Schultz and Dr. Billings and found Plaintiff's performance to be in "stark contrast." Tr. 22. The ALJ's conclusion that Plaintiff's varied performance between the two examinations is not substantiated by the record. There is no expert testimony interpreting and comparing the raw data of the two exams, and the ALJ is not qualified to do so on his own. *Padilla v. Astrue*, 541 F. Supp.2d 1102, 1106 ("as a lay person, an ALJ is simply not qualified to interpret raw medical data in function terms") (internal quotes omitted).

The ALJ based his finding by comparing such things as her remembering 2 out of 3 items after a delay compared with remembering 3 out of 3 items after a delay a month later. Tr. 22. Whether these differences are medically significant or within the realm of expected deviation is an opinion reserved to a psychological expert, not the ALJ.

Therefore, on remand, the ALJ is instructed to make a new credibility determination after fully developing the record as outlined above and to call a qualified psychological expert at the rehearing to opine on the significance of the raw data from the two exams.

**4.   RFC Determination**

Plaintiff lists a fourth issue in her motion outline, that the ALJ improperly assessed her RFC and improperly found she could return to her past relevant work as an agricultural produce sorter.  However, Plaintiff failed to address the issue in the body of her motion.  As the Ninth Circuit has repeatedly advised, the Court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in Plaintiff's brief.  *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994).

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED May 3, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER - 11